In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00281-CR


______________________________




RAYMOND EARL BARNETT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20922




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On August 15, 2003, C.C. turned seventeen years of age. The State charged that, before that
date, Raymond Earl Barnett had committed (1) sexual assault of a child by engaging in vaginal
intercourse with C.C. on or about June 15, 2003 (count one); (2) indecency with a child by touching
C.C.'s genitals on or about May 10, 2003 (count two); and (3) sexual assault of a child by engaging
in vaginal intercourse with C.C. on or about July 15, 2003 (count three). A Fannin County jury
convicted Barnett of the three charges (1) and acquitted him of a fourth charge of indecency with a
child. On appeal, Barnett challenges the legal and factual sufficiency of the evidence to prove that
any, let alone three separate, offenses occurred before C.C. was seventeen years old.

 Because we find the evidence legally and factually sufficient to support count two, indecency
with a child, we affirm the trial court's judgment as to that count. Because we find the evidence
legally sufficient but factually insufficient to support the jury's implicit findings that Barnett's actions
charged in counts one and three occurred before C.C. turned seventeen, we reverse the trial court's
judgment as to those counts and remand those counts to the trial court for a new trial.

(1) The Question: Did Each Charged Act Occur Before C.C. Turned Seventeen?

 An essential element of both sexual assault of a child and indecency with a child is that the
victim must be a child "younger than 17 years" at the time of the alleged acts. Tex. Penal Code
Ann. § 21.11(a) (Vernon 2003), § 22.011(a)(2), (c)(1) (Vernon Supp. 2006). The State need not
prove the exact date of the offenses, especially considering Texas' well-established recognition that
a child may be uncertain about the timing of the offense. See Tex. Code Crim. Proc. Ann. art.
21.02(6) (Vernon 1989); Dixon v. State, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006). Nonetheless,
the State must prove beyond a reasonable doubt each essential element of each charged offense. See 
Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2006); Butler v. State, 769 S.W.2d 234, 237
(Tex. Crim. App. 1989). Most of the State's case focused on whether Barnett had engaged in sexual
intercourse and sexual contact with C.C., and very little evidence showed that the events happened
before C.C.'s seventeenth birthday. As the detail of the sexual contact is not relevant to the age
element in focus in this appeal, we will mention it only so far as to provide context for the relevant
discussion.

(2) Standards of Reviewing the Evidence for Legal and Factual Sufficiency

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). We base our determination on all the evidence and reasonable inferences
therefrom. See Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). "[D]irect evidence of the elements of the offense is not
required. Juries are permitted to make reasonable inferences from the evidence presented at trial." 
Hooper, 214 S.W.3d at 14.

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong or
manifestly unjust; or whether the great weight and preponderance of the evidence is contrary to the
verdict. Marshall, 210 S.W.3d at 625; Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App.
2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 

 In a factual sufficiency review, we are to afford "due deference" to a jury's determinations. 
Marshall, 210 S.W.3d at 625. In our review, we must employ appropriate deference to the judgment
of the fact-finder, and any evaluation should not substantially intrude on the fact-finder's role as the
judge of the weight and credibility given to witness testimony. See Jones v. State, 944 S.W.2d 642,
648 (Tex. Crim. App. 1996). However, we need not pay absolute deference to the fact-finder; a
factual sufficiency review "permits the reviewing court to substitute its judgment for the jury's" to
"a very limited degree." Marshall, 210 S.W.3d at 625; see also Johnson, 23 S.W.3d at 8 ("absolute
deference is not the standard"). We give deference to the jury for its unique position to draw
conclusions based on the credibility and weight of conflicting evidence, but we are not constrained
to defer to the jury's determination when the evidence, though not in conflict, is of admittedly
questionable accuracy. Johnson, 23 S.W.3d at 8-9. The authority of this Court to disagree with the
fact-finder's determination is appropriate "when the record clearly indicates such a step is necessary
to arrest the occurrence of a manifest injustice." Id. at 9. 


(3) Legally and Factually Sufficient Evidence Supports Count Two

 The jury heard evidence--through C.C.'s in-court testimony and out-of-court videotaped
forensic interview--that Barnett touched C.C.'s genitals, as charged in count two, in an incident we
will call the "$50.00 incident." (2) 

 C.C. testified that the $50.00 incident occurred while she was living at her Aunt Bernay's (3)
house and that it was the first sexual contact that occurred between her and Barnett. C.C. testified
that, at some point after she moved into Bernay's house, Barnett placed on C.C.'s bed an envelope
containing $50.00 and a letter asking that he be allowed to touch her. C.C. stated she then went out
to the garage where Barnett was. C.C. testified that, in the garage, Barnett made more requests to
touch her, and then "he stuck his finger in me, . . . and he rubbed his private area." The State asked
if Barnett put his finger "inside your private area," to which C.C. responded, "Yes." The State then
clarified that C.C. meant genitals when she referred to her "private area." Finally, the State asked
C.C. how old she was when this incident happened, to which C.C. responded, "I was 16."

 Although there was no evidence specifically contrary to C.C.'s recall of the $50.00 incident,
C.C. herself testified that she is a medicated paranoid schizophrenic, that she has memory problems,
that she hears voices, and that she is a regular user of both methamphetamine and marihuana. As
for this specific incident, C.C. testified that, during the $50.00 incident, she was "high" and
"paranoid," "wasn't paying attention to anything," and "didn't know what was going on." 

 Barnett seems to assert that, due to C.C.'s admitted drug use, mental illness, and confusion
over dates, C.C.'s testimony should be discounted in its entirety. (4) Additionally, Barnett emphasizes,
as additional reasons to discount C.C.'s testimony, the testimony of defense witnesses that impeached
C.C.'s character for truthfulness, disputed facts underlying other incidents (see discussion of counts
one and three below), and raised doubts about C.C.'s motive and bias in falsely testifying against
Barnett. 

 Having reviewed all of the evidence in the light most favorable to the verdict, and especially
considering C.C.'s specific testimony that the $50.00 incident happened when she was sixteen, we
find that a rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. There was legally sufficient evidence of the age element in support of Barnett's
conviction on count two. 

 Further, we defer to the jury's implied determination that C.C.'s testimony regarding the
$50.00 incident was credible and should be given weight over impeaching testimony, and C.C.'s own
admitted confusion as to the timing of the event, since the jury was in the unique position to be able
to hear and see these witnesses. C.C.'s testimony that the $50.00 incident happened when "I was 16"
is among the most specific testimony she provided over the course of this trial. While the jury could
have chosen to disbelieve C.C., it did not. We will not second-guess that decision here. The
evidence is not so weak that the verdict is clearly wrong or presents a manifest injustice, and there
is not a great weight and preponderance of the evidence contrary to the verdict. The evidence is
factually sufficient.

(4) Evidence is Legally Sufficient, but Factually Insufficient, on Counts One and Three

 C.C. testified to numerous incidents in which Barnett sexually assaulted her, and, as with
count two, Barnett did not request the State to elect the particular incidents serving as the bases of
the indicted and charged offenses in counts one and three. 

 C.C. did not specifically testify, as she had when testifying about the $50.00 incident, that
any particular incident of sexual assault happened while she was under seventeen years old.
Nonetheless, C.C. testified that she had had sexual intercourse with Barnett "three or four" times
while she was sixteen years old. (5) 

 Although the State did not tie this global statement to any particular incidents, C.C. testified
to at least three incidents of sexual intercourse with Barnett that could serve as the basis of the
verdicts on counts one and three. At trial, C.C. testified to three distinct incidents of sexual
intercourse: in the bedroom at Bernay's house; at the pool; and on the day she moved out. The jury
also watched C.C.'s videotaped forensic interview in which, with no reference to time frame, she
described in detail an incident of sexual intercourse on the couch and briefly mentioned that she and
Barnett had had sexual intercourse "on the bed after the rooms got switched" and "in the other bed
too." The State never addressed whether the incidents mentioned on the videotape corresponded to
the incidents C.C. testified to at trial; the videotape was introduced after C.C. had finished testifying. 
None of the incidents described on the videotape or at trial were identified by a date--whether by
day, month, or year, or by reference to some other event--that could place the incidents before C.C.'s
seventeenth birthday, other than through the inference that two or more of these were among the
three or four incidents of sexual intercourse C.C. mentioned in her global statement. 

 We find that the inference that at least two of the numerous described incidents of sexual
intercourse are among those three to four C.C. said occurred before she turned seventeen is
"reasonable based upon the combined and cumulative force of all the evidence when viewed in the
light most favorable to the verdict." See Hooper, 214 S.W.3d at 17. C.C.'s global statement that she
had sexual intercourse as "just described"--so as to be within the elements of counts one and
three--is itself, and considering the inferences drawn therefrom, legally sufficient support for those
counts, when viewed in the light most favorable to the verdict.

 We find on a neutral review of all the evidence, however, that C.C.'s global statement--as
combined with the other evidence and inferences drawn therefrom--is factually insufficient.

 Although C.C. did not testify to any particular timing for the pool incident, Barnett
introduced several witnesses who placed that event after C.C.'s seventeenth birthday. The pool's
owner testified that Barnett introduced him to C.C. at the pool "sometime in September, around the
middle of September, 2003" about a month after C.C. turned seventeen. The pool's owner further
testified he was a bit uncomfortable that C.C. was so young and was there so early in the morning,
so he asked her how old she was and C.C. said she was seventeen. The pool's owner testified that
C.C. had been on his property on more than one occasion, but within the weekend or week of that
time in September about which he was testifying. Bernay also testified that Barnett and C.C. had
gone to the pool the first or second weekend in September, after C.C. was seventeen.

 Similarly, other evidence on the moving out incident places that incident after C.C.'s
seventeenth birthday. C.C. had testified at some length to Barnett's forcible sexual assault of her on
the night she moved out of Bernay's house. Bernay, however, testified that C.C. moved out "the
second or third week of September 2003," specifically "September 16th or 17th of 2003," at which
time C.C. was seventeen. C.C. admitted she moved out after she was seventeen, although she
believed this was in 2004 instead of 2003. Additionally, a police report in evidence indicated that
this event occurred in September 2003, after C.C.'s seventeenth birthday. 

 Other than C.C.'s global statement that she had sexual intercourse with Barnett three or four
times when she was sixteen, nothing ties the pool incident or the moving out incident to a date before
C.C.'s seventeenth birthday. The great weight and preponderance of the evidence supports a finding
that the pool and moving out incidents occurred after C.C.'s seventeenth birthday. 

 We are left to assess the sufficiency of the evidence that the incident "in the bedroom" to
which C.C. testified at trial and the additional incidents C.C. mentioned on the videotape occurred
while C.C. was sixteen years old. We find that C.C.'s global statement, and the inference that the
testified-to incidents are among those three or four that occurred when C.C. was sixteen, is too weak
to sustain the verdict. Viewing all the evidence in a neutral light, this is simply not a reasonable
inference to make. (6) Only the global statement supports the finding on the age element, and this
evidence is so weak as to objectively undermine confidence in the jury's determination. We must
conclude that evidence is so weak that the verdict is clearly wrong and manifestly unjust. The
evidence on counts one and three is factually insufficient.

 Accordingly, as to count two, we affirm the trial court's judgment; and, as to counts one and
three, we reverse and remand for a new trial consistent with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 4, 2006

Date Decided: April 10, 2007


Do Not Publish
1. The jury assessed Barnett's punishment at seventy-five years' imprisonment per count. The
court sentenced him to three concurrent seventy-five-year terms. 
2. There was also evidence of other incidents of Barnett's touching of C.C.'s genitals: (1) the
"moving out" incident; (2) the "time at Lake Fannin"; and (3) the woods incident. Because Barnett
did not request the State to elect the particular incident serving as the basis of the indicted and
charged offense in count two, and because we find the evidence regarding the $50.00 incident
sufficient to support the verdict, we need not examine the sufficiency of the evidence of these other
incidents. 
3. Bernay is Barnett's mother. 
4. Despite these protestations, Barnett has never contested C.C.'s competency as a witness. See
Tex. R. Evid. 601.
5. The testimony in context is as follows:


 Q: [by the State] How many times did you have sexual intercourse, what
you just described? How many times did you have sexual intercourse with Ray
Barnett while you were living at [sic] Aunt Bernay while you were 16?


 A: [by C.C.] Three or four.

 

 Q: Do you remember the dates exactly?

 

 A: No. 
6. In addition to the drug use, memory problems, and mental illness discussed above, we also
note  the  voluminous  evidence  of  C.C.'s  inability  to  assess  time:  though  C.C.  turned 
seventeen August 15, 2003, she told the jury that she turned seventeen on August 15, 2004; C.C.
testified that she dropped out of school in May 2001 when she was fifteen, though she was fourteen
in May, 2001. Additionally, C.C. testified to impossible time frames. C.C. testified three times that,
after leaving her aunt's house, she stayed with her mother "for about three years" and then with her
boyfriend for seven months and various others for shorter periods of time, all supposedly between
September 2003 and trial in October 2005, two years later. C.C. also testified that she was in jail and
was released "6th of October - - September - - October - - yes, of October" 2005. In assessing the
time between her October 6 release from jail and her testimony against Barnett five days later on
October 11, 2005, C.C. testified to staying at Myra's "about a week," then at Mandy's for "two
weeks," and then at Linda's, where she's been "about four days. . . . No, it's been about a week and -
- a week and today."