Opinion filed June 28, 2012



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00154-CR

_____

## CASS ANOVA BROWN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR20303**

## O P I N I O N

The jury found Cass Anova Brown guilty of the offense of continuous sexual abuse of a young child or children. The victims were his daughter and his son, both of whom were under the age of fourteen. Appellant elected to have the trial court assess his punishment, and it assessed his punishment at imprisonment for life. We affirm.

Appellant presents us with five issues on appeal. In his first issue, he generally argues that the evidence is insufficient to support the verdict of guilty. In Issue Two, he claims that the trial court erred when it allowed the person who conducted the forensic interview of one of the children

to testify as the outcry witness. In his third issue, appellant maintains that the trial court erred when it admitted photographs of his messy house; numerous sex toys; and adult pornographic literature, videos, and pictures into evidence. Appellant asked the trial court for a limiting instruction to the jury in connection with portions of the video of one of the forensic interviews, but the trial court did not give the instruction. In his fourth issue, appellant claims that the trial court thereby reversibly erred. Lastly, in Issue Five, appellant complains that the trial court committed reversible error when it denied his request for an instruction on lesser included offenses.

Because the State charged appellant with continuous sexual abuse of a child, the State had to prove three elements: (1) the defendant "commit[ted] two or more acts of sexual abuse" (2) "during a period that is 30 or more days in duration," and (3) "at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West Supp 2011).

In his first issue, appellant maintains that the State did not meet its burden in that it did not prove that the instances of sexual abuse took place during a period that was thirty or more days in duration. For that reason, he claims that the evidence is insufficient to support the verdict of guilty.

Normally, we would discuss the sufficiency of the evidence issue first. However, a resolution of that issue involves the question of the admissibility of the testimony of one of the outcry witnesses. We will consider the complaint about that outcry witness first.

We refer to the child victims in this case by the pseudonyms previously assigned to them in the indictment: Angela Green and Adam Green. Appellant is their father. Their stepmother—a codefendant with appellant in this case—is Kylie Brown. The jury convicted Kylie Brown, in a joint trial with appellant, of the same offense involved in this appeal. Today, in a separate opinion, we also affirm Kylie Brown's conviction.

Angela was eleven years old and in the fourth grade when she told a friend at school that she was being sexually abused. Because Angela suffered from ADHD, she and her friend wrote down the directions for Angela to use to call the police to report the sexual abuse. The friend also wrote down her mother's phone number in case Angela needed help. Angela telephoned the 9-1-1 dispatcher on January 7, 2009. The State produced a CD recording of the 9-1-1 conversation, and the trial court admitted it.

2

Amanda Williams was the 9-1-1 dispatcher who received Angela's call. Williams directed Officer Stephanie J. Morgan of the Brownwood Police Department to the address that Angela gave to Williams: 1612 Indian Creek Road in Brownwood. When Officer Morgan got there, Angela came out of the house. She did not want Officer Morgan to go inside because the house was messy. Angela was scared and upset, but she gave Officer Morgan basic personal information and told her about the general nature of the reason behind the call to 9-1-1. Officer Morgan talked with Angela for "probably about 10 minutes." Adam never made any comments to Officer Morgan about sexual abuse.

Officer Morgan contacted Child Protective Services. Kimberly Cruz and Shannon Duran responded and went to 1612 Indian Creek Road. Angela finally allowed Officer Morgan, Cruz, and Duran to go inside the house. Officer Morgan described the condition of the house to the jury: "The house inside was in general disarray. There was clothes in the floor, trash, dirty dishes, the kitchen was very dirty, the bathroom as well." The mattresses were not covered with linens and were very dirty. Animals were in the house, and the house smelled of animal urine and feces. The house was not habitable for children. There was no objection to any of this testimony. Cruz photographed the inside of the house.

While Officer Morgan and the others were at the house, appellant arrived. Officer Morgan told him that Angela had accused him of touching her inappropriately and of engaging in sexual misconduct. He denied any illegal behavior. He thought that Angela might be rebelling in response to discipline imposed upon Adam and her for stealing candy from a convenience store and for not doing their chores. Additionally, appellant said that Angela might be referring to a time when she was bleeding vaginally and he used his hand to examine for the cause; he determined it to be the result of drinking too much apple juice. That day, CPS removed Angela and Adam from the home.

The next day, January 8, 2009, Mikey Betancourt, a forensic interviewer with the Hill Country Child Advocacy Center, interviewed Angela in depth. Over appellant's hearsay objection, the trial court allowed the State to use Betancourt as the outcry witness in the case involving Angela.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). We will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules

or principles. *Id.* at 380. We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

Article 38.072 of the Code of Criminal Procedure permits outcry statements by certain victims of child abuse to be admitted during trial, despite the hearsay rule, if the provisions of that article are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2011). The only provision of Article 38.072 about which appellant complains is the provision that requires that, before a witness can qualify as a proper outcry witness, the person must have been at least eighteen years old and must have been the first person to whom the victim made statements about the offense. *Id.* § 2(3). We note that the child must have described the alleged offense in some discernible way and that the outcry must be more than a general allusion to sexual abuse before a person is a proper outcry witness. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd). A trial court has broad discretion to determine the admissibility of outcry evidence, and we will not disturb its determination as to the proper outcry witness absent a showing in the record that the trial court clearly abused its discretion. *See Garcia*, 792 S.W.2d at 92; *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd).

Appellant complains that there were at least three people over the age of eighteen to whom Angela made an outcry before the interview with Betancourt: the 9-1-1 dispatcher, Officer Morgan, and one of Angela's teachers. Appellant's argument appears to be based upon the notion that continuous sexual abuse cases can never involve multiple outcry witnesses. He argues that this is so because the offense is a "series-type offense which encompasses multiple specific and otherwise separate criminal charges within a single collected offense." Therefore, the argument continues that, because prior to the forensic interview with Betancourt—the State's outcry witness—there were at least three individuals over eighteen years old to whom Angela reported the abuse, Betancourt could not be the outcry witness. For several reasons, we disagree.

There may be more than one outcry witness provided that each one testifies about different instances. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd). We see no reason to fashion a new rule when the charge is one of continuous sexual abuse, a charge in which multiple outcry witnesses might seem to occur with even more frequency than in offenses involving a single

4

instance of sexual abuse. But, here, we do not reach that question because we find that Betancourt was the proper outcry witness as to Angela.

We have listened to the CD recording of the call from Angela to 9-1-1. Angela told the dispatcher, Williams, that her mom made her put her hands up in her. She also told Williams that her dad put his middle part up in her.

We have considered Officer Morgan's testimony as well as that portion of her incident report that is contained in the reporter's record as a trial court's exhibit admitted during the voir dire examination of Officer Morgan. Officer Morgan reported that Angela told her that her parents "touched her in her private areas" and that her "dad puts his male parts inside of her."

We hold that the statements that we have referred to from the 9-1-1 call and Officer Morgan's report are no more than general allusions to sexual abuse. In *Sims*, 12 S.W.3d at 500, the child victim's mother testified that the child had told her that the defendant "had touched her private parts." On appeal, the court held that the trial court could have reasonably determined that the statement by the child to her mother that the defendant "had touched her private parts" was no more than a general allusion to sexual abuse. 12 S.W.3d at 500. "On the other hand," the appellate court said, "the child's statements to [the outcry witness] regarding how, when, and where [the defendant] touched her clearly satisfied the statutory requirements." *Id.*; s*ee Smith*, 131 S.W.3d at 930–31 (where testimony was that defendant "had been performing oral sex on [child] for about a year," the testimony did not relay specific details about charged offense of aggravated sexual assault of a child).

Officer Morgan's report also contains a statement that Angela told her that her stepmother made her place "her [Angela's] hands together, lacing and folding her fingers to make a fist." Kylie Brown then made her put her hands "up inside of Kylie in her private area." However, Betancourt's interview with Angela revealed that this happened on more than one occasion. As we shall see later, only Betancourt's testimony, as in *Sims*, provided "how, when, and where" this kind of abuse was allegedly inflicted upon Angela.

We think that the principle discussed in *Sims* is even more applicable where, as here, the actual charge goes beyond charging some type of sexual abuse and requires proof of the additional element that the instances of sexual abuse extend for a period in excess of thirty days. We hold that the information related by Angela to either Williams or Officer Morgan does not touch upon the detail required when a defendant is charged with continuous sexual abuse of a young child or

5

children. As appellant points out to us, one of the elements of the offense with which appellant is charged in this case, and the one that he claims was not proven beyond a reasonable doubt, is the time element—that the acts of sexual abuse continued for a period in excess of thirty days. Such information was not a part of the 9-1-1 call. However, as we have said and as in *Sims*, the statements that Angela made to Betancourt concerned the "how, when, and where" of the offense. Those statements had not been made either to Williams or to Officer Morgan. Article. 38.072 requries a description of "the offense." "The offense" in this case is continuous sexual abuse of a young child or children and requires proof not only of the sexual abuse, but also that two or more instances of it occurred for a period of time in excess of thirty days. Section 21.02(b).

As far as Angela's conversation with the teacher, the record reflects that nothing more than the broadest statements were made to her. None of the detail that filled the interview with Betancourt was present in Angela's conversation with this teacher.

We will review Betancourt's testimony based upon his interview with Angela in our discussion of the next issue. Suffice it to say here, Angela first told Betancourt about all the instances of sexual abuse by her father and by her stepmother in graphic detail, including the detail of the instances of abuse *as well as* the circumstances from which (as we shall discuss later in this opinion) the how, when, and where relative to the sexual abuse could be determined. The trial court did not abuse its discretion when it allowed Betancourt to testify as the outcry witness in this case.

Moreover, Betancourt based his testimony on information gained in his interview with Angela. During the trial, appellant and Kylie Brown jointly offered the video of that interview into evidence, and the trial court admitted it. Appellant cannot now be heard to complain of the information contained in it. A party may not complain on appeal of the admission of improper evidence, offered by the other side, when that party introduced the same evidence or evidence of a similar character. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We are aware of the rule that an objecting party does not waive his objection in those cases where a trial court has erroneously admitted evidence and the opposing party introduces more evidence to meet, destroy, or explain it by introducing rebutting evidence. *Id.* at 719. That is not the case here, however. Appellant introduced the video, which was the very basis for Betancourt's testimony, and the video was not offered to meet, destroy, or explain Betancourt's testimony. Because he introduced the video of Angela's forensic interview into evidence, appellant has waived any error in the

6

admission of Betancourt's testimony. *See id.* at 718–19. For all of the above reasons, we hold that the trial court did not abuse its discretion when it allowed Betancourt to testify as the outcry witness as far as Angela is concerned. Appellant's second issue on appeal is overruled.

Appellant frames his first issue as a broad challenge that the evidence is insufficient to support the jury's verdict of guilty. However, when we study his arguments, the only specific challenge that he makes is that the evidence is insufficient to show that the acts of sexual abuse occurred during a period of time that is more than thirty days in duration, as required by Section 21.02(b).

Appellant argues, "In this case, the state did not even attempt to identify a single instance of alleged abuse by specific date, relying instead on broad time ranges based on the alleged locations where different incidents allegedly occurred." He continues, "Simply alleging that one incident occurred at one residence, and the next incident occurred at the next chronological residence after the family moved does not solidly establish a time period of over 30 days between the incidents." His argument concludes that there must be "some sufficient evidence by which a jury may decide the statutory element of the time frame." In his argument, appellant does not specifically attack anything more than the element of the offense that pertains to the requirement that the occurrences of sexual abuse extend for a period of more than thirty days.

Under the standard of review applicable to criminal cases, the evidence is sufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder rationally could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Jackson*, 443 U.S. at 314, 318 n.11, 320. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

As we have said, to establish continuous sexual abuse of a child, the State must prove three elements: (1) the defendant "commit[ted] two or more acts of sexual abuse" (2) "during a period that is 30 or more days in duration," and (3) "at the time of the commission of each of the acts of

sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." Section 21.02(b).

The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse. *See Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts.")).

The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by a statute of limitations. *See Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998). Aggravated sexual assault of a child has no period of limitations. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B) (West Supp. 2011); TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2011). Similarly, continuous sexual abuse has no period of limitations. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(D) (West Supp. 2011). Normally, in aggravated sexual assault of a child cases, time is not a material element. However, although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 21.02(d) (West Supp. 2011) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."); *Williams*, 305 S.W.3d at 890–91 (requiring State to prove two acts of sexual abuse "committed over a span of thirty or more days"). Furthermore, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." Section 21.02(d).

While Angela could not give the specific dates when the many instances of sexual abuse to which she referred took place, she was able to tell Betancourt the details of where they took place, the grade she was in at school at the time, or what the season of the year was at the time of the sexual abuse. Some of the instances occurred when the family lived at 902 Bailey Street in Brownwood. Angela gave Betancourt the details of other incidents of sexual abuse that occurred when the family lived at 1612 Indian Creek Road in Brownwood. She told about another incident

8

during the summer at a lake house on Lake Brownwood. She also said that the last occurrences of sexual abuse took place between Thanksgiving and Christmas in 2008.

Records from the City of Brownwood showed that the Browns lived at 902 Bailey Street from April 2007 until December 2007. Those same records, as well as testimony from the owner of the house who rented it to the Browns, showed that the Browns moved into 1612 Indian Creek Road around December 20, 2007.

Angela told Betancourt that the first instance of sexual abuse occurred when her stepmother put her middle finger inside of Angela and kept going "in and out." This incident took place in the stepmother's room at 902 Bailey Street. Angela was seven or eight years old when this first act of sexual abuse occurred.

Betancourt testified that Angela told him about a later incident that occurred when the family was still living at 902 Bailey Street. Sometime around 4:00 a.m., Kylie Brown came into the room where Angela was sleeping. Kylie Brown woke Angela and told her that she could not sleep and needed her to help. Angela protested that she needed her sleep so that she would not fall asleep in class. Nevertheless, Kylie Brown took Angela into Kylie's bedroom and, after Kylie put lubricant on Angela's hands, made Angela clasp her hands together, put them both inside Kylie Brown's "middle area," and move them around in a circular motion. It was established that the words Angela used for "vagina" were "middle area." Kylie Brown told Angela, "Make sure you 'F-word' me real good and hard." (Angela used the term "F-word" in the interview with Betancourt). At some point in time, Angela took her hands out fast, washed them, and went to bed. Kylie Brown woke her up and spanked her as punishment for stopping. This same type of sexual abuse happened again when they lived at 1612 Indian Creek Road.

During her interview with Betancourt, Angela said that appellant "sticked his middle area up in my middle area." It was established that Angela's words for "penis" were "middle area." That happened at more than one location on more than one occasion. One such incident took place when the family had just moved into the house at 1612 Indian Creek Road. They were still unpacking boxes and putting up beds. The evidence shows that this would have been sometime around December 20, 2007. Appellant told Angela that he wanted her "to get on top of [him] now." This incident happened on Kylie Brown's bed. Angela told Betancourt that her dad was going up and down and that it hurt. Her dad told her, "I'm going to 'F-word' you real good."

9

(Again, Angela used the term "F-word" in the interview with Betancourt). Although she did not tell Betancourt exactly when, she said that "it" happened again soon thereafter.

Angela told Betancourt about another instance when appellant told her, "Now or I am going to bust you all black and blue." On another occasion, appellant "lubed" himself; on another, he put this "little roll-up thing on his middle area." She did not know what the "roll-up thing" was called, but she drew a picture of it as it looked rolled up and unrolled and also drew a picture of the packaging.

Angela described another incident when that same thing happened later. "He made me get on top of him 'again' and it was upstairs" at a lake house on Lake Brownwood. This act of sexual abuse took place during the summer between Angela's third and fourth grades in school. Brownwood Independent School District records were admitted into evidence and showed that the summer between Angela's third and fourth grades was the summer of 2008. Angela remembered that it was summer because she was sweating. Angela and her dad were working on the lake house. The lake house was a two-story house. They either were working upstairs when appellant told Angela to take off her clothes or were elsewhere when he told her to go upstairs and take off her clothes. She did not want to do that, but he told her that she had better do it. He made her get on top of him for a time and then on the bottom while he penetrated her "middle area" with his "middle area." She was ten at the time. She told Betancourt that she asked her dad, "Dad, why?"

Mike Morgan owned the lake house where Angela and appellant were working. In order to establish a time frame for the sexual abuse that occurred at the lake house, the State elicited testimony from Morgan that he bought the lake house on June 24, 2008, and that appellant did some work on it after that. Both Angela and Adam had been to the lake house when appellant was working on it. Morgan also rented the house at 1612 Indian Creek Road to the Browns, and he verified that the family moved into that house around December 20, 2007.

While she did not give a specific date, Angela told Betancourt that her dad had put his middle area in her mouth five or six times in the past. She said that he would grab her head and, demonstrating by putting her hand behind her head, would "push her head down on it."

Angela related to Betancourt that her dad and stepmother made her "brother go in and out of her mom"; he went in and out of her middle area with his middle area. Betancourt testified that Angela told him that, although her back was to them, "she was in the room while her brother had sex with her mom." There was a video made of this incident.

10

Kylie Brown also made a video recording. Betancourt noted in his testimony that Kylie Brown was videotaping appellant while he was putting his finger inside Angela's middle area. Angela said that her brother, Adam, had watched the video and had seen her screaming in it. There were several occurrences at various places and times during which appellant put his finger inside Angela. One time when she was being videotaped while she was being sexually abused digitally by appellant, Angela began to bleed, and "they" told her to get a bath. She had to wear a "pad" and stayed home from school the next day because she was still bleeding and the pad was full of blood; blood had also gotten on her panties. While Angela was in the bathtub, she yelled at her dad and stepmother, "Would you stop that, people." Angela was not certain in which residence this particular incident occurred.

After the call to 9-1-1, Adam Green was first interviewed by Betancourt. Adam denied any knowledge of any kind of sexual abuse. Adam began therapy with Melinda Thomas, a licensed professional counselor at Taylor Clinic in Brownwood, on April 23, 2009. She had provided counseling to Angela since January 29, 2009. She stopped counseling with both of them on December 17, presumably in 2009, when they were placed with their mother and stepfather in Chicago.

About six months into Adam's therapy, Thomas felt like Adam was in the process of making an outcry about certain things. He did make an outcry, and as required, Thomas notified Child Protective Services. While she did not normally video her sessions with patients, Thomas set up a time for Adam to come to her office so that a recording could be made of the session. This occurred on November 19, 2009. The recording was admitted into evidence by agreement and was published to the jury.

During the interview, Adam told the interviewer that, in the beginning of the 2008 school year, he, on more than one occasion, heard Angela screaming at night. He had seen his sister being forced to have sex with appellant and Kylie Brown. The first time he saw it, appellant and Angela had no clothes on, and Kylie was sitting on the bed while it was happening. Kylie Brown was the main one who did things to him while appellant watched. Adam used dolls to demonstrate the positions of those engaged in the sexual abuse.

There are other instances of sexual abuse about which Angela told Betancourt, but we believe we have detailed any number of such incidents upon which the jury rationally could have based its verdict in this case.

The evidence shows that Angela was a seven- or eight-year-old child when she was first sexually abused by Kylie Brown at 902 Bailey Street. She was no more than ten, if not younger, when appellant began to sexually abuse her. The evidence shows that appellant and Kylie Brown continued to sexually abuse Angela and that they did not stop until sometime between Thanksgiving and Christmas in 2008; Angela was eleven years old at that time. The sexual abuse began at 902 Bailey Street in Brownwood at least by December 20, 2007, when the family moved out of that address. The evidence shows that the sexual abuse continued at 1612 Indian Creek Road, at the lake house during summer 2007, and at 1612 Indian Creek Road through the Thanksgiving season in 2008. That is a period of time in excess of thirty days in duration. We have considered all the evidence in the light most favorable to the verdict. We hold that the jury rationally could have found that each essential element of the charged offense was proven beyond a reasonable doubt. The evidence is sufficient to support appellant's conviction, and his first issue is overruled.

In appellant's third issue, he basically argues that the trial court erred when it admitted three different types of evidence: (1) State's Exhibit Nos. 57 through 69, photographs that depict the generally messy condition of the Browns' house; (2) State's Exhibit Nos. 6 through 20, photographs that depict various "sex toys" recovered from the Browns' house during the execution of a search warrant; and (3) State's Exhibit Nos. 27 through 36, which are photographs that show Kylie Brown nude while using or handling sex toys, and State's Exhibit Nos. 117 and 117-A, which purport to be a collection of videos also recovered during the execution of the search warrant.

When the State offered its Exhibit Nos. 57 through 69, appellant's only objection was that they were not relevant. Generally, the decision to admit photographs into evidence is within the sound discretion of the trial court. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). Also, it is the general rule that a photograph is admissible if verbal testimony about the matters shown in the photograph is admissible. *Id.* As noted in our discussion of the evidence above, the State presented testimony regarding the condition of the house; there was no objection to that testimony. Additionally, Investigator Steve Woodard of the Brownwood Police Department also testified as to the condition of the house. There was no objection to that testimony either. The photographs were admissible over a relevance objection.

Appellant attempts to argue that the trial court should have undertaken a Rule 403 balancing test under the Texas Rules of Evidence. TEX. R. EVID. 403. However, as to this particular evidence, he did not make that objection in the trial court—he relied upon his objection that the evidence was not relevant. Appellant thereby waived his complaint that the trial court should balance relevant evidence against those Rule 403 factors that would affect otherwise admissible evidence. *See* TEX. R. APP. P. 33.1; *Berry v. State*, 233 S.W.3d 847, 856 (Tex. Crim. App. 2007). The trial court did not abuse its discretion when it admitted State's Exhibit Nos. 57 through 69 into evidence.

Exhibit Nos. 6 through 20 depict various "sex toys" found when the officers executed a search warrant at 1612 Indian Creek Road. The court admitted all of the "sex toys" into evidence with the exception of what appeared to be a whip. The other items included a very large brown sex toy, or dildo, and a large fist-shaped dildo-type sex toy designed to be inserted into a female sexual organ. Investigator Woodard testified that these large dildos were used in an activity known as "fisting," much the same as Angela described to Betancourt when she described being made to put both hands in Kylie Brown's vagina. The other exhibits contained various lubricants, body creams, a substance known as "Anal Eze," a massager, condoms, a burned magazine, a book entitled "The Joy of Sex," a book entitled "Red Hot and Rude Positions," and a camcorder.

With the exception of a whip and a bottle of Viagra in someone else's name, the trial court ruled that the items were relevant and, after performing the balancing test required under Rule 403, determined that the evidence was prejudicial but that its probative value outweighed any such prejudice.

The trial court did not abuse its discretion when it found that the exhibits were relevant. The large dildos or sex toys were relevant to Angela's claim that, on more than one occasion, she had to stick both hands in her stepmother's vagina and move them around inside of her. Additionally, appellant told his coworker, Dale Davidson, that Angela might have hurt herself on sex toys she had been caught using. The items of lubrication were relevant to Angela's claim that she would have to place "lube" on her hands on those occasions when she had to engage in "fisting" her stepmother. They were also relevant to her claim that appellant placed "lube" on himself. The condoms were relevant to Angela's claim that appellant put one on during one of the incidents of sexual abuse. Angela told Betancourt that she and her brother looked at a book that showed something about a "wheelbarrow" position. That is shown in the "Red Hot and Rude

13

Positions" book. The camcorder was relevant to Angela's claim that a video had been made of her dad putting his finger in her middle part and that her brother, Adam, had seen her screaming on this video. Another video was made when her little brother, Adam, was forced to have sex with Kylie Brown. We hold that this evidence tends to make the existence of the acts of sexual abuse more probable than it would be without the evidence. Therefore, the evidence was relevant. TEX. R. EVID. 401.

The next question for us to answer is whether the probative value of that relevant evidence was substantially outweighed by the danger of unfair prejudice. *See* Rule 403. There is a presumption that relevant evidence is more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. Almost all evidence is prejudicial to an opponent. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). Unfair prejudice does not refer to an adverse or detrimental effect that the evidence might have. *Id.* Rather, it refers to whether the evidence has an undue tendency to suggest that a decision be made upon an improper basis, normally an emotional one. *Id.* Evidence is unfairly prejudicial only if it tends to have an adverse effect beyond merely tending to prove the issue or the fact that allows for its admission into evidence in the first place. *Id.*

A Rule 403 analysis includes four factors, but is not limited to these four: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). We will not reverse the decision of the trial court unless its ruling was outside the zone of reasonable disagreement. *Id.*

Before a jury could convict appellant in this case, it had to find, among other things, beyond a reasonable doubt, that he committed two or more acts of sexual abuse on a young child or children. Each of the items noted above that the trial court admitted into evidence was probative because those exhibits contained compelling evidence that made facts of consequence (that the sexual abuse occurred as claimed) more probable.

While the evidence is prejudicial and there is a risk that it would "generate an emotional response," that does not mean that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *Casey*, 215 S.W.3d at 883. Each of the items of evidence addressed in this portion of the opinion goes directly toward the series of events described by Angela. "Like all corroborating evidence, because it is consistent with [Angela's] story, it has a tendency to make her [claims] more plausible." *Id.* at 883–84. The State needed this testimony.

14

Without once again putting Angela, who suffered from ADHD as well as post- traumatic stress disorder, through the traumatic events that had already occurred in her young life, the evidence offered was the only way the State had to explain fully what had gone on in the Brown household for the period of time alleged in the indictment. Additionally, these events did not happen in a vacuum; the jury was entitled to know the context in which these events took place. *Ford v. State*, 26 S.W.3d 669, 675 (Tex. App.—Corpus Christi 2000, no pet.).

As far as the amount of time necessary to present the testimony, the record shows that the items were obtained pursuant to a search warrant of the Browns' home. One witness testified about the exhibits, the attorneys presented their arguments for and against the admission of the exhibits, and the trial court ruled on them all in a very short time. The record, as it pertains to these specific exhibits, totals only approximately 47 pages of the approximately 800 pages in the reporter's record from the guilt/innocence phase of the trial.

We have evaluated all the factors outlined above, and we hold that the factors weigh in favor of admissibility. The probative value of this evidence is not *substantially* outweighed by any danger of *unfair* prejudice. The trial court did not abuse its discretion when it admitted State's Exhibit Nos. 6 through 20 into evidence.

When law enforcement officers executed the search warrant at 1612 Indian Creek Road, they recovered a desktop computer, a laptop computer, and several discs and videotapes. The exhibits about which appellant complains are State's Exhibit Nos. 27 through 36, 117, and 117-A. However, the trial court sustained appellant's Rule 401 and Rule 403 objections to State's Exhibit Nos. 29, 32, 34, and 35, and they were not admitted. Accordingly, we will limit our review to the ones that were admitted. State's Exhibit No. 27 is an image of Kylie Brown's naked upper torso. State's Exhibit Nos. 28, 30, 31, 33, and 36 are images of a nude Kylie Brown using or holding one of the previously referred to sex toys on herself. State's Exhibit No. 33 is a close-up image of Kylie Brown's female genitalia. All of these images of Kylie Brown were retrieved from a computer taken when the officers executed the search warrant at 1612 Indian Creek Road.

We conduct our review under the same standards as our review of State's Exhibit Nos. 6 through 20. The images of Kylie Brown were relevant. The image of Kylie Brown using or holding the large dildo or sex toy was relevant to Angela's claim that, on more than one occasion, she was made to "fist" Kylie Brown. Additionally, appellant told his coworker, Davidson, that Angela might have hurt herself on sex toys she had been caught using. Angela described Kylie

15

Brown's genitalia as having hair around it and being "black, and it was big." As we have said, before a jury could convict appellant in this case, it had to find beyond a reasonable doubt that he committed two or more acts of sexual abuse on a young child or children. Each of the exhibits was probative because those exhibits contained compelling evidence that made facts of consequence (that the sexual abuse occurred as claimed) more probable.

Appellant argues that this evidence is highly prejudicial. But, that is not the test. The test is whether the relevant evidence is *unfairly* prejudicial so that its effect *substantially* outweighs the probative value of the evidence.

Again, as with the exhibits that we discussed earlier, these exhibits are prejudicial, and there is a risk the exhibits would "generate an emotional response." *Casey*, 215 S.W.3d at 883. But, again, that does not mean that the probative value of the evidence was *substantially* outweighed by the danger of *unfair* prejudice. Each of the items of evidence addressed in this portion of the opinion goes directly toward the series of events described by Angela. The evidence has a tendency to make Angela's claims more plausible. *Id.* at 883–84. The State had a need for this testimony. Angela, as we have pointed out, suffered from ADHD, post-traumatic stress disorder and adjustment disorder. Without once again putting Angela through the traumatic events that had already occurred in her young life, the evidence offered was the only way the State had to explain fully what had gone on in the Brown household for the period of time alleged in the indictment. As we discussed earlier, these instances of sexual abuse did not happen in a vacuum; the jury was entitled to know the context in which they took place. *Ford*, 26 S.W.3d at 675.

As far as the amount of time necessary to present the testimony, the record shows that the Brownwood Police Department obtained the images of Kylie Brown pursuant to a search warrant of the Browns' home and that they came from computer files. The time taken to identify the exhibits, to make objections to them, and to argue over their admissibility consumed approximately 47 pages of an 800-plus page reporter's record from the guilt/innocence phase of the trial.

We have evaluated all of the factors outlined above, and we hold that the factors weigh in favor of admissibility. The probative value of this evidence is not substantially outweighed by any danger of unfair prejudice. The trial court did not abuse its discretion when it admitted State's Exhibit Nos. 27, 28, 30, 31, 33, and 36 into evidence. We have already said that there is a presumption that relevant evidence is more probative than prejudicial. *Montgomery*, 810 S.W.2d

16

at 389. Appellant has not overcome that presumption as to State's Exhibit Nos. 6 through 20, 27, 28, 30, 31, 33, and 36.

As far as State's Exhibit Nos. 117 and 117-A are concerned, the record reflects that the trial court viewed State's Exhibit No. 117 outside the presence of the jury. The court ruled that State's Exhibit No. 117, a disc recovered from the Browns' home that appeared to contain "a collection of commercially produced downloaded pornography," was inadmissible and did not permit State's Exhibit No. 117 to be admitted into evidence. The trial court found that the probative value of most of the tracks on State's Exhibit No. 117 was outweighed by the prejudicial value, but it found that three of the tracks were admissible under Rule 403. The State redacted the exhibit to include only two of the three "short" tracks permitted by the trial court, and the redacted version was admitted into evidence as State's Exhibit No. 117-A. The reporter's record reflects that State's Exhibit No. 117-A has not been attached to the record "due to potential child pornographic nature."

Appellant asserts that these items of evidence had "virtually no relevance to the allegations in this case and [were] of a highly prejudicial nature, again inciting the jury to condemn Appellant as a general bad character without application to the actual criminal charges." The record shows, however, that one of the two tracks admitted into evidence, as described by the trial court, depicted a person portraying herself "as a young child or as a teenaged child. . . . And it appears that there was the penetration and the blood coming, as if that was penetrating the hymen." The other track on State's Exhibit No. 117-A depicted a "fisting episode." These two tracks depicted events similar to some of the instances of sexual abuse described by Angela and, thus, had a tendency to make Angela's seemingly implausible claims more plausible. We cannot hold that the trial court abused its discretion in admitting State's Exhibit No. 117-A into evidence over appellant's relevance and Rule 403 objections. There is a presumption that relevant evidence is more probative than prejudicial. Appellant has not overcome that presumption. The trial court did not abuse its discretion when it admitted any of the exhibits that appellant attacks in his third issue, and it is overruled.

In his fourth issue, appellant maintains that the trial court erred when it refused to give a limiting instruction with regard to hearsay statements contained in the video of Adam's second forensic interview. Rather than enter into a line-by-line recitation of the testimony of the interviewer, the video was admitted by agreement among the State, appellant's lawyer, and Kylie

17

Brown's lawyer. Before the video was played for the jury, the trial court asked the attorneys, "Is there anything that is contained within this exhibit that would be the subject of your objection containing the double hearsay? Are you pursuing that, [Kylie Brown's attorney], or not?" The attorney responded, "[I]f something comes up like that, we will catch it and ask for a limiting instruction." Appellant's lawyer did not comment on the trial court's question. The video was then played for the jury in its entirety.

After the video had been published to the jury, appellant's lawyer asked the trial court for a limiting instruction. The trial court reminded the attorneys that, based on what had been said, if there appeared to be a problem in the video, the attorneys were to call that problem to the trial court's attention at that time so that it could be taken care of at that time. The trial court reminded them that it had specifically asked about this very thing and that neither attorney had objected during the playing of the video. The trial court did not give the limiting instruction and was correct in that refusal. After evidence has been admitted without a limiting instruction under TEX. R. EVID. 105, it becomes a part of the general evidence in the case and may be used for all purposes. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). The video was admitted without limitation. The request for a limiting instruction must be made timely, and that means at the time it is admitted. *Id.* (citing *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001); *Prescott v. State*, 123 S.W.3d 506, 515–16 (Tex. App.—San Antonio 2003, no pet.)). Because appellant did not timely request a limiting instruction, he was not entitled to it and has not preserved anything for review on appeal. Rule 33.1(a)(1)(A).

Appellant also claims that he was entitled to a limiting instruction on "adult pornographic materials that the court admitted over counsel's objections." We can assume that we know what those exhibits are. The State argues in its brief that appellant's counsel made no request for a limiting instruction as to these exhibits. Appellant's attorney makes no record reference to the place where he made such a request. He merely cites to the reporter's record where the trial court stated that it thought that "the Defense" had requested one. The trial court clearly referred to the fact that it was talking about exhibits already admitted. It was not going to give a limiting instruction because it had admitted the evidence as "same transaction contextual evidence" and was not "bad acts or extraneous offenses." We, like the State, cannot find where appellant made a request for a limiting instruction. At the very least, it does not appear before or at the place that the trial court admitted such exhibits. Even if appellant did request a limiting instruction, he did

not timely request it. *Delgado*, 235 S.W.3d at 251 (citing *Hammock*, 46 S.W.3d at 894; *Prescott*, 123 S.W.3d at 515–16). Once again, because appellant did not timely request a limiting instruction, he was not entitled to it and has not preserved anything for review on appeal. Rule 33.1(a)(1)(A). Appellant's fourth issue is overruled.

Appellant, in his fifth issue on appeal, proposes that the trial court erred when it did not give a jury instruction on the lesser included offenses of aggravated sexual assault of a child, indecency with a child, and sexual performance by a child. There is a two-pronged test to be used to determine if a lesser included offense must be included in the jury charge when requested by a defendant. The first prong, whether an offense is a lesser included offense of the offense alleged by the State, is a question of law and does not depend upon the evidence produced at trial. The pleadings approach is the only test to use to determine the first part of the inquiry into whether a defendant is entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The first part of the inquiry is this: Are the elements of the lesser offense included within the proof necessary to establish the offense charged? If so, then we proceed to determine whether some evidence exists in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Id.* at 536; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *Torres v. State*, 343 S.W.3d 297, 304 (Tex. App.—Eastland 2011, pet. ref'd).

Article 37.09 of the Texas Code of Criminal Procedure provides as follows:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

When we apply that test, in accordance with the cases we have just cited, we hold that the offenses of aggravated sexual assault of a child, indecency with a child, and sexual performance by a child, as alleged in the indictment in the case before us, are lesser included offenses of the offense of continuous sexual abuse.

We now proceed to the second part of the test: Is there some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser offense? We have outlined the evidence above and have examined the entire record. We hold that there is no evidence in the record that would permit a jury rationally to find that, if appellant is guilty, he is guilty only of a lesser included offense. Under this record, the lesser included offenses are not valid and rational alternatives to the charge against appellant. *Hall*, 225 S.W.3d at 535–36. Because we do not find error, there is no need for us to address appellant's argument regarding a harm analysis. Appellant's fifth issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


June 28, 2012

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

20