**Affirmed as modified; Opinion Filed July 18, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01281-CR

### LUIS MUNIZ MONTERO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-57905-N**

# MEMORANDUM OPINION
Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Myers

A jury convicted appellant Luis Muniz Montero of continuous sexual abuse of a child and

assessed punishment at 40 years' imprisonment. In one issue, appellant argues the evidence is

insufficient to support the verdict. As modified, we affirm the trial court's judgment.

#### DISCUSSION

### I. Sufficiency of the Evidence

In his only issue, appellant contends the evidence is insufficient to support a finding of

guilt for the offense of continuous sexual abuse of a child under fourteen.

In reviewing the sufficiency of the evidence, we consider all evidence in the light most

favorable to the jury's verdict and determine whether any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S.

307, 319 (1979); *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). It remains the

factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319. We do not reevaluate the weight and credibility of the evidence and then substitute our judgment for that of the factfinder. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *See Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011).

A person commits the offense of continuous sexual abuse of a child if, during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse and, at the time of the commission of each act, he is seventeen years of age or older and the victim is a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b).

The indictment alleged that on or about June 1, 2012, appellant did then and there:

[I]ntentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [E.D.], a child younger than 14 years of age, hereinafter called complainant, namely by THE CONTACT OF THE COMPLAINANT'S FEMALE SEXUAL ORGAN BY THE DEFENDANT'S SEXUAL ORGAN and by CONTACT BETWEEN THE MOUTH OF THE DEFENDANT AND THE SEXUAL ORGAN OF THE COMPLAINANT[.]

Although the exact dates of the abuse need not be proven, the offense requires proof that two or more acts of sexual abuse occurred during a period of thirty days or more. *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd); *see* TEX. PENAL CODE ANN. § 21.02(d).

The State must prove the accused acted with the requisite criminal intent. *Crow v. State*, No. 05–16–01434–CR, 2018 WL 271803, at *3 (Tex. App.—Dallas Jan. 3, 2018, no pet.) (mem. op., not designated for publication). Direct evidence of the required mental state, however, is not required. *Id.* A jury may infer intent or knowledge from any facts that tend to prove its existence,

including the defendant's acts, words, conduct, and method of committing the crime. *Id.*

A child victim's testimony alone is sufficient to support a conviction for continuous sexual abuse of a child. *See, e.g., Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *Gray v. State*, No. 05–17–01427–CR, 2018 WL 6599021, at *10 (Tex. App.—Dallas Dec. 17, 2018 no pet.) (mem. op., not designated for publication). Also, a child victim's outcry statement alone can sustain the conviction. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See Robinson v. State*, No. 05–09–01329, 2011 WL 168736, at *4 (Tex. App.—Dallas Jan. 20, 2011, no pet.) (mem. op., not designated for publication). We also note that child victims are not required to be specific about the dates the abuse occurred. *See Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006); *Vazquez v. State*, Nos. 05–12–00548–CR, 05–12–00549–CR, 2013 WL 5614300, at *5 (Tex. App.—Dallas Oct. 14, 2013, no pet.) (mem. op., not designated for publication). It is not often that children will know, even within a few days, the dates they were sexually assaulted. *See Sledge v. State*, 953 S.W.2d 253, 256 n. 8 (Tex. Crim. App. 1997); *Gray*, 2018 WL 6599021, at *10.

The evidence shows that the complaining witness, E.D., was thirteen years old when she testified at the trial of her step-grandfather, appellant Luis Muniz Montero. About two years before trial, E.D. lived with her father, appellant, and her grandmother in a two-room apartment in Dallas. E.D. shared a room with her father, and appellant and E.D.'s grandmother had the other room. They had lived in that apartment since E.D. was "really little."

E.D. could not remember the first time appellant touched her inappropriately, although she testified that appellant once told her he had touched her since she was three years old. The first instance E.D. could recall occurred when she was eight years of age, and she was alone in the apartment with appellant because her father and grandmother were both at work. Appellant came

into E.D.'s room when she was sleeping, woke her up, and told her to go to his room. When she refused, appellant carried her to his room, took off her clothes, and started touching her breasts and vagina with his hand.

E.D. recalled that appellant laid her down on the bed next to him during this incident. After touching her, appellant turned her sideways and put his penis between her legs, touching her vagina. "He was moving . . . [l]ike backwards and forwards," and then "[s]omething came out of" his penis. Asked what color it was, E.D. said it was "[l]ike white," and that it landed on her legs. She wiped it off with some dirty clothes, after which appellant stopped and ordered her to take a shower and go to school.

Appellant repeated this conduct between two or three times a week, until E.D. was twelve years old. In addition, he would, "[m]ostly every time," lick her vagina, and he would do this either "when he would stop or like at the beginning." On one occasion, appellant tried to put his penis inside E.D.'s vagina, but she screamed because "it hurt" and he stopped. The abuse did not always occur in the morning; appellant would sometimes attack her in the middle of the night.

By the time E.D. was twelve, she and her family had moved into a house with her aunt, uncle, and cousin. E.D.'s father and appellant lived in a garage that had been converted into two bedrooms. E.D. and her cousin lived in the house, and they had their own bedrooms. One day, when E.D. was twelve years old, she went to the garage to get some money from her father's room, which required her to go through appellant's room. As E.D. was passing through appellant's room she saw him getting out of the shower. He told her he was going to touch her and made her lay on his bed. He removed her clothes and touched her vagina with his hands. He also touched her vagina with his penis, as he had done before.

E.D. testified that she never told anyone about the abuse because she "was scared" and because appellant had "told me to keep it a secret." Appellant also told her he had "videos" of

–4–

E.D. and her fifteen year-old cousin, who has autism, "doing stuff." E.D. explained that her cousin had once touched her breast. Appellant threatened to show these videos to her father and aunt if she reported his behavior. E.D. did not believe appellant had any such pictures or videos but she knew he had made videos of himself touching her, and she feared he might show those to her father.

E.D. had two phones and two Instagram accounts, and appellant sent her text messages, both "regular" messages on her phone and messages on her Instagram account. She explained that she tended to break phones and the extra phone was a backup. Likewise, one Instagram account was a "backup account." She denied that she had the extra Instagram account to hide certain things from her father, nor that there were any "inappropriate" pictures or videos stored there.

On one occasion, E.D. "cracked" her phone and appellant let her borrow his phone. E.D. left her Instagram account open on appellant's phone and, according to E.D., this was how appellant gained access to her Instagram account and was able to send her messages.

In September of 2017, E.D. and her family went on a camping trip to Lake Tawakoni. Her father did not go because he had injured his leg. E.D. was surprised when he eventually showed up and stayed until the end of the trip. When they got home, E.D.'s father told her he had found her backup phone at home, and he discovered messages from appellant on Instagram. Appellant had been using E.D.'s "backup" Instagram account to send messages to her regular account. These messages, written in Spanish, were admitted into evidence along with an English translation. In one of those messages appellant wrote, according to the English translation, "I already told you how I get over being angry." E.D. asked, in Spanish, "How?" She also said, "I forgot already." Appellant replied, according again to the English translation, "Only by penetrating you. I forget about everything. And I don't say anything."

E.D.'s father asked her why appellant was sending her messages. She "stayed quiet" and

started crying. She eventually told her father "[g]enerally . . . what was going on," and then appellant started texting E.D. while her father watched. E.D.'s father called the police.

E.D. was forensically interviewed at the Dallas Children's Advocacy Center (DCAC) on September 4, 2017. She provided the interviewer, Bernadette Yupit-Martinez, with many sensory and periphery details regarding the abuse. She described one incident that occurred in a "makeshift bedroom" that was located in a garage that appellant and E.D.'s father shared, about "a month prior to" the interview. During this incident, appellant came out of the bathroom as E.D. was walking by. He grabbed her, removed all of her clothes, lifted her leg, and placed his penis between her legs, touching her vagina as he moved back and forth. Appellant ejaculated on her and E.D. wiped it off with a shirt appellant provided. E.D. also described "another one that happened when she was 11 but in [the] fifth grade." This incident was "pretty similar" in nature but occurred when E.D. was asleep in bed. She woke up in appellant's bed and he was "doing the same movement to her," moving back and forth with his penis between her legs. Additionally, E.D. gave Yupit-Martinez more general descriptions of other occasions when appellant would put his tongue on her vagina, or would try to put his penis in her vagina.

E.D.'s therapist at the DCAC, Jaqueline Chavez, testified that she had E.D. write a "trauma narrative," i.e., "[t]he child's interpretation of their story they want to tell," as part of her therapy. In that narrative, E.D. wrote about "maybe the earliest memory she had," which occurred when she was "about 8 or 9 years old." She talked about how "her grandfather had touched her vagina . . . [u]nder the clothes." She wrote about another incident "where he threatened her" and "had her drink something," after which she "passed out." She added that "when she woke up she was naked and he was naked and she wasn't sure what happened at that point."

Turning to the question of whether the evidence is sufficient, we conclude there is ample evidence in this record to support the verdict. Beginning with the issue of identity, E.D. identified

appellant as the person who sexually abused her. Also, E.D.'s father identified appellant as the man E.D. accused of sexually abusing her. Furthermore, the evidence shows appellant was older than seventeen years of age at the time of the abuse and that the victim was younger than fourteen. E.D. was, in fact, thirteen years old at the time of trial. Evidence also shows that she was eight during the earliest incident she could recall, and twelve when the last incident occurred. In addition, the evidence shows appellant committed two or more acts of sexual abuse against E.D. that occurred during a period of thirty or more days in duration. Appellant states that the indictment "alleged that Moreno committed continuous sexual abuse against [E.D.] by committing the predicate offense of indecency with a child by contacting his hand and the genitals of complainant." But the indictment in this case did not allege the predicate offense of indecency with a child by contact; it alleged acts of sexual abuse that constitute aggravated sexual assault, of which "sexual intent" is not an element. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii). Hence, appellant's argument that the evidence fails to prove "sexual intent" is immaterial regarding whether the evidence is sufficient to prove the elements of the charged offense. As we have already seen, there is sufficient evidence in this record to support the jury's verdict. We overrule appellant's issue.

## II. Modification of Judgment

We next address the State's cross-point that we should reform the judgment in order to reflect that the sex-offender registration requirements apply and that the judgment should be modified to show the age of the victim.

Appellant's conviction for continuous sexual abuse of a child under the age of fourteen is defined as a "[r]eportable conviction or adjudication" for purposes of the sex offender registration statute. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (stating, in part, that a conviction based on a violation of section 21.02, continuous sexual abuse of a child, is a "[r]eportable

–7–

conviction or adjudication").  As a person who has a reportable conviction or adjudication, appellant is subject to the registration requirements of that program.  *See id*. art. 62.051.

As alleged in the indictment and proven in this case, the victim was younger than fourteen years of age on the alleged date of the offense.  Because there is sufficient evidence to support the conviction, and because the offense required a showing that the age of the victim was younger than fourteen years, we modify the judgment in this case to show that the sex offender registration requirements apply and that the age of the victim at the time of the offense was younger than fourteen years of age.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd); *see also Lourenco v. State*, Nos. 05–13–01092–CR, No. 05–13–01114–CR, 2015 WL 356429, at *10 (Tex. App.—Dallas Jan. 28, 2015, no pet.) (mem. op., not designated for publication) (modifying judgments to show applicability of sex offender registration requirements because evidence was sufficient to support convictions); *Ruiz v. State*, Nos. 05–12–01703–CR, 05–12–01704–CR, 2014 WL 2993820, at *12 (Tex. App.—Dallas June 30, 2014, no pet.) (mem. op., not designated for publication) (same).

As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47.2(b)
181281F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

LUIS MUNIZ MONTERO, Appellant

No. 05-18-01281-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F17-57905-N.
Opinion delivered by Justice Myers.
Justices Molberg and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62" should be changed to "Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62."

"The age of the victim at the time of the offense was N/A" should be changed to "The age of the victim at the time of the offense was younger than 14 years of age."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 18th day of July, 2019.