

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0035-18

### FREDDY GARCIA, Appellant

### v.

### THE STATE OF TEXAS

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE FOURTEENTH COURT OF APPEALS**
**HARRIS COUNTY**

KEASLER, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, and WALKER, JJ., joined. YEARY, J., filed a concurring opinion in which SLAUGHTER, J., joined. KELLER, P.J., concurred. KEEL, J., dissented.

## O P I N I O N

Freddy Garcia was indicted on one count of aggravated sexual assault, but at trial, the victim described two separate sexual assaults. When the State rested its case in chief, Garcia asked for an election between the two incidents. This request was denied. The court of appeals held that denying Garcia's request was error of constitutional magnitude and reversed Garcia's conviction. We agree that the trial judge committed constitutional error

but disagree that the error was harmful. We therefore reverse the court of appeals' judgment and affirm Garcia's conviction.

## I. BACKGROUND

### A. Pre-trial and trial.

In 1987, the State filed an indictment against Garcia alleging that, on or about August 16, 1987, he penetrated his child step-daughter's female sexual organ with his own. Upon making bond, Garcia absconded. He was found in 2015 and extradited to Harris County.

At trial, the victim testified to multiple instances in which Garcia acted in a sexually suggestive, indecent, or assaultive manner toward her. Each time the victim began describing a different indecent or sexually assaultive act, Garcia moved that the State be required to make an election—to pick which incident it would ultimately ask the jury to base its verdict upon. Two of these incidents warrant description here.

First, the victim recounted an incident wherein Garcia called her into the bathroom and "raped" her—penetrated her sexual organ with his own. The victim estimated that she was around eleven years old when this assault occurred. The court of appeals referred to this as "the bathroom incident." The victim also recounted an incident wherein Garcia assaulted her in her bedroom ("the bedroom incident"). The victim estimated that this assault occurred on or about August 16th of 1987, as alleged in the indictment, when she was twelve.

When the State rested its case, Garcia re-urged his motion for election. The State opposed the motion, arguing that the proper time for an election is at the close of all

evidence, and the trial judge agreed. Garcia offered to produce a citation to demonstrate his right to an election at the end of the State's case, but the trial judge declined, continuing to hold that he would not order an election until both sides rested and closed.

So, at the close of all the evidence, Garcia once again asked the trial judge to make the State elect which incident it would rely upon for conviction. To satisfy this request, the State submitted, and the trial judge adopted, an application paragraph specifically focused upon the bathroom incident:

> Now, if you unanimously find from the evidence beyond a reasonable doubt that on or about the 16th day of August, 1987, in Harris County, Texas, the defendant, Freddy Garcia, did then and there intentionally or knowingly cause the penetration of the female sexual organ of [the victim] . . . by placing his sexual organ in the female sexual organ of [the victim], while inside a bathroom inside an apartment [the victim] shared with her mother, brothers, and the defendant, then you will find the defendant guilty[.]

The jury found Garcia guilty of aggravated sexual assault of a child.

**B. Appeal.**

On appeal, Garcia complained that the trial judge committed reversible constitutional error by refusing to order an election when the State rested its case in chief. The State responded by arguing that the trial judge had not erred because there was scant evidence that genital-to-genital penetration occurred during the bedroom incident. It also argued that, if the trial judge did err, the error was harmless beyond a reasonable doubt. The State did not initially take issue with Garcia's assertion that the trial judge's error should be measured

against the constitutional harm standard laid out in Rule of Appellate Procedure 44.2(a).[1]

The court of appeals, following our opinion in *O'Neal v. State*, held that the trial judge should have ordered an election at the end of the State's case in chief.[2] The court of appeals also concluded that, under *Phillips*, the trial judge's failure to order an election when the State rested was constitutional error, subject to a Rule 44.2(a) harm analysis.[3] Finally, citing our opinion in *Dixon v. State*, the court of appeals "consider[ed] the four purposes behind the election rule" in assaying the record for harm: (1) to protect the accused from the introduction of extraneous offenses; (2) to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury that the defendant was guilty; (3) to ensure a unanimous verdict as to one specific incident which constituted the offense charged in the indictment; and (4) to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.[4]

The court of appeals first observed that, because Article 38.37 of the Code of Criminal Procedure "permits the admission of evidence of relevant extraneous offenses committed by

---

[1] *See* State's Amended Appellate Brief at 8; *see also* TEX. R. APP. P. 44.2(a) ("Constitutional Error").

[2] *Garcia v. State*, 541 S.W.3d 222, 231 (Tex. App.—Houston [14th Dist.] 2017) (citing *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988)).

[3] *Id.* at 232 (citing *Phillips v. State*, 193 S.W.3d 904, 912–14 (Tex. Crim. App. 2006)).

[4] *Id.* at 232–33 (citing *Dixon v. State*, 201 S.W.3d 731, 733 (Tex. Crim. App. 2006)).

a defendant against a child victim," the first factor did not weigh in favor of reversal.[5] With regard to the second and third factors, the court of appeals found that there was a significant risk that the jury rendered a mixed-and-matched or non-unanimous verdict because the jury instructions "conflated the earlier bathroom incident and the separate August 16, 1987 bedroom incident."[6] This was essentially because, although the charge referred specifically to an incident occurring "in a bathroom," the evidence showed that the bedroom incident, not the bathroom incident, occurred "on or about the 16th day of August, 1987." Finally, the court found that the fourth factor also weighed in favor of reversal, albeit "not [as] heavily," because without a timely election Garcia "had to defend against both assaults"—the bedroom incident and the bathroom incident.[7] Because it could not say that the trial judge's error was harmless beyond a reasonable doubt, the court of appeals reversed Garcia's conviction and remanded the case for a new trial.

## C. Petition for Discretionary Review

In this petition for discretionary review, the State contends that the court of appeals' analysis was flawed in two respects. First, the State argues that the court of appeals should not have applied the Rule 44.2(a) constitutional harm standard to the trial judge's election error in this case. The trial judge essentially instructed the jury that, to convict Garcia of

---

[5] *Id.* at 233 (citing, *inter alia*, TEX. CODE CRIM. PROC. art. 38.37).

[6] *Id.* at 233–34.

[7] *Id.* at 234–35.

aggravated sexual assault, it had to unanimously agree upon the bathroom incident. The State argues that this instruction satisfied Garcia's right to a unanimous verdict and his right to be convicted only upon proof beyond a reasonable doubt. Thus, the State argues that the trial judge's error is not rightly characterized as a total failure to order an election; it is better understood as a failure to order an election in a timely fashion. And while a total failure to order an election might be subject to a constitutional harm analysis, a "merely delayed" election is non-constitutional error that should be reviewed under a Rule 44.2(b) non-constitutional harm analysis.[8]

The State also argues that the court of appeals was mistaken when it concluded that the application paragraph in the court's charge conflated the bedroom incident with the bathroom incident. According to the State, the mere fact that the application paragraph contained the August 16, 1987 date did not suggest to the jury that it was free to mix and match between the bathroom incident and the bedroom incident. Instead, the State argues that the jury instructions adequately focused the jury's deliberative attention on a single event, the bathroom incident, and that attempting to utilize an "on or about" date more closely correlated with that incident would have required the court's instructions to deviate from what was authorized by the indictment. We address each ground in turn.

## II. ANALYSIS

In a sexual assault trial, where one act of intercourse is alleged in the indictment and

---

[8] *See* TEX. R. APP. P. 44.2(b) ("Other Errors").

more than one act of intercourse is shown by the evidence, the State must elect the act upon which it would rely for conviction.[9] The trial judge retains the discretion to order the State to make an election at any time before the State rests its case in chief.[10] But once the State rests, in the face of a timely request by the defendant, the trial court must order the State to make a decision. "Failure to do so constitutes error."[11]

For brevity's sake, we will occasionally refer to the rule requiring the State to make an election at the end of its case in chief as "the rule of timely election," or "the timely election rule." For purposes of this opinion, a timely election means an election made at the end of the State's case in chief.

## A. Did the trial judge commit constitutional error?

In *Phillips v. State*, we identified a defendant's due-process right to adequate notice and his due-process right to present a defense as two of several constitutional rights that are implicated by a failure to order a timely election upon request.[12] So, if followed, *Phillips* would seem to decide this issue: Based on his due-process right to receive adequate notice

---

[9]  *O'Neal*, 746 S.W.2d at 771 (citations omitted).

[10]  *Id*. at 772.

[11]  *Id*.

[12]  *See Phillips*, 193 S.W.3d at 913–14 ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charge, if desired, are among the constitutional rights of every accused in a criminal proceeding[.]") (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)).

and his due-process right to present a defense, Garcia had a constitutional right to timely election. By requesting an election at the end of the State's case in chief, he asserted that right at the appropriate time, and the trial judge erred to deny his request. As a result, constitutional error occurred, subject to a Rule 44.2(a) harm analysis.

We have previously said that "where a harm analysis is appropriate, claims of constitutional error are subject to constitutional harm analysis and all other claims of error are subject to non-constitutional harm analysis."[13] Constitutional errors that a party or reviewing court considers *de minimis* are not, for that reason alone, subject to non-constitutional harm analysis. They are simply less likely to be found harmful under the appropriate constitutional harm analysis. In this case, the fact that the court's charge focused the jury's attention on a single criminal incident may have vindicated Garcia's right to a unanimous verdict, but it did not somehow un-violate his due-process right to adequate notice at the end of the State's case in chief.

It follows that the only question we need to answer in this ground is whether we will continue to adhere to *Phillips*. We ordinarily observe the doctrine of *stare decisis* "to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process."[14] An exception is made when we conclude

---

[13] *See Jacobs v. State*, 560 S.W.3d 205, 209 (Tex. Crim. App. 2018) (citations omitted).

[14] *E.g.*, *Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000) (citations omitted).

that the precedent in question "was poorly reasoned or is unworkable."[15] So, to decide whether the trial judge's error in this case should be analyzed under a Rule 44.2(a) constitutional harm analysis, we need only decide whether *Phillips* was poorly reasoned or if its holding has become unworkable.

We begin by observing that the rule announced in *Phillips* is hardly unworkable. The "fundamental constitutional principles" of adequate notice and an opportunity to defend require that an election be made when the State rests its case in chief.[16] So, if the defendant asks for an election at that time, the trial judge violates a constitutional right by overruling the request. The defendant can complain of constitutional error on appeal.

Was *Phillips* poorly reasoned? We do not think so, at least insofar as it drew a connection between the defendant's right to a timely election and his rights to adequate notice and an opportunity to defend. *Phillips* forthrightly acknowledged that it was the first opinion to "directly decide[] the proper harm analysis for failure to elect."[17] But it did not decide that issue on a whim. *Phillips* carefully assayed "the reasons for requiring an election" and this Court's prior precedents on the matter. It then expressly decided that failing to comply with a motion for election at the end of the State's case in chief offends certain "fundamental constitutional principles"—namely, the defendant's right to receive

---

[15] *Id.* at 571–72 (citations omitted).

[16] *Phillips*, 193 S.W.3d at 913–14 (citations omitted).

[17] *Id.* at 913.

adequate notice and an opportunity to defend himself.[18]

The State does not really attempt to assail *Phillips*'s logic in this regard, but it does offer a hodgepodge of arguments for why, despite *Phillips*, a "merely delayed" election should be subject to non-constitutional harm analysis. For example, the State argues that delaying the election was a "procedural [error] rather than a substantive error," which supposedly "raises the question of whether the constitutional harm standard should still apply." We are not persuaded. The fact that a particular right can be characterized as "procedural rather than substantive" does not mean—indeed, does not even really suggest—that it is of non-constitutional import. It is not for nothing that our federal Constitution guarantees every accused person some minimal "due process."[19]

But this argument does raise the question: If not the Due Process Clause, what provision of law ultimately guarantees a criminal defendant the right to force a timely election upon request? For example, does that right flow from a statute or written rule of evidence or procedure?[20] Were we convinced that the right of timely election is ultimately underwritten by one of these provisions of law and has no independent due-process pedigree, we might readily agree with the State that, while the defendant has a constitutional right to an election at some point in the trial, he has only a statutory or rule-based right to a timely

---

[18] *Id.* at 913–14.

[19] *See* U.S. CONST. amends. V, XIV.

[20] *Cf. Villescas v. State*, 189 S.W.3d 290, 292–93 (Tex. Crim. App. 2006).

election. If that were so, a "merely delayed" election truly would be error of non-constitutional magnitude.

But our research has revealed no statute or written rule guaranteeing the right to an election at the end of the State's case in chief—which should come as no surprise. The timely election rule is only to be found in the pronouncements of this Court and its predecessor courts as handed down over the last century-and-a-half. And those pronouncements provide, at the very least, a reasonable basis for *Phillips*'s conclusion that the timely election rule is a requirement of fundamental due process.

One of the earliest Texas cases we have found discussing the timely election rule, *Fisher v. State*, described it as "the true rule and the one which has been uniform in this state."[21] *Fisher* cited Roscoe's Digest Commentaries, the 1874 edition of which explained: "[T]he reason for putting a prosecutor to his election being that the prisoner may not have his attention divided between two charges, the election ought to be made, not merely before the case goes to the jury, as it is sometimes laid down, but before the prisoner is called on for his defence at the latest."[22]

Another early Texas case discussing the rule, *Lunn v. State*,[23] cited Bishop's Commentaries on the Law of Criminal Procedure, which in 1872 opined that "[t]he chief

---

[21] *Fisher v. State*, 33 Tex. 792, 793 (Tex. 1870).

[22] Henry Roscoe, *Roscoe's Digest of the Law of Evidence in Criminal Cases* 203 (Horace Smith et al. eds., 7th Am. from the 8th London ed. 1874) (citations omitted).

[23] *Lunn v. State*, 44 Tex. 85, 86–87 (Tex. 1875).

thing, down to the time when the government rests its case and the defence is called for, is to prevent prejudice to the defendant, in the eyes of the jury, by bringing against him testimony tending to show crimes for which he is not really indicted, and to which he is not finally to make answer in the cause."[24] Bishop thus concluded: "[W]hatever may have been done at an earlier stage of the trial, it is plain that as a general rule there should be an election required before the prisoner opens to the jury his defence."[25] *Lunn* ultimately adopted Bishop's statement of the rule.[26]

Yet another early Texas case, *Crosslin v. State*, described timely election as a "right" accorded to the defendant by law.[27] At least four different times, *Crosslin* drew an express connection between this legal "right" and the expectation that the defendant will receive enough notice to defend himself. *Crosslin* said that the election "should not be so long delayed that it would embarrass the accused by leaving him in doubt as against which offense he will be called upon to defend."[28] It expressed a concern that a delayed election would put the defendant "at the disadvantage of having to defend, not only against one but against 50

---

[24] Joel Prentiss Bishop, *Commentaries on the Law of Criminal Procedure* § 463 (2d ed. 1872).

[25] *Id.*

[26] *See Lunn*, 44 Tex. at 88 ("[I]f in any case the particular facts would make the case an exception to the rule calling for the exercise of discretion the election should be made before the defendant offers his evidence.").

[27] *Crosslin v. State*, 90 Tex. Crim. 467, 471 (Tex. Crim. App. 1921).

[28] *Id.* at 470.

or more offenses."[29]  It concluded that the trial judge's error in failing to order a timely election in that case ultimately forced the defendant "to proceed with his cross-examination of the state's witnesses and in the introduction of his own in ignorance of the particular offense of which he was prosecuted."[30]  And it quoted approvingly of another court's analysis of the harmful effect of an untimely election: "Such a course was calculated to confound, distract, and confuse the defendant in his defense.  He was expected to meet one charge at a specified time, but was required to defend against and meet six different acts[.]"[31]

The point is not that these cases prove beyond dispute that the timely election rule is of constitutional origin.  We need not and do not decide on a blank slate that the Due Process Clause guarantees the defendant a constitutional, notice-based right to force an election at the end of the State's case in chief.  The point is that even if the constitutional pedigree of the timely election rule was up for debate when *Phillips* was decided, in light of *Phillips*, it no longer is.  *Phillips*'s holding was supportable at the time it was handed down, and it remains supportable now.

Because we conclude that *Phillips*'s holding was not unreasonable, and because we think the standard *Phillips* established is not unworkable, we decline to overrule it.  The court of appeals rightly concluded that Garcia had a constitutional, due-process right to an election

---

[29]  *Id*. at 471.

[30]  *Id*.

[31]  *Id*. (quoting *State v. Hilberg*, 61 P. 215, 216 (Utah 1900)).

at the close of the State's case in chief. Because that right was timely asserted and erroneously denied, constitutional error occurred. Whatever events unfolded after the trial judge's timely-election error may have mitigated the harm stemming from it, but those developments did not somehow transform Garcia's constitutional right into a non-constitutional right. The State's first ground for review is overruled.

**B. The error in this case was harmless.**

As to the first of the four recognized election "purposes,"[32] the court of appeals held that because Article 38.37 of the Code of Criminal Procedure "permits the admission of evidence of relevant extraneous offenses committed by a defendant against a child victim," the first factor did not support a finding of harm.[33] The parties have not challenged this holding, and our precedents support it in any event.[34]

As to the second and third election purposes, the court of appeals acknowledged that the jury instructions in this case required the jury to "unanimously find beyond a reasonable doubt" that Garcia had penetrated the victim "inside a bathroom inside an apartment" to convict him of aggravated sexual assault. But the instructions also contained an "on or about" date of August 16, 1987, which, according to the victim's testimony and the contemporaneous evidence, is closer to when the bedroom incident occurred. The court of

---

[32] *See Owings v. State*, 541 S.W.3d 144, 150–51 (Tex. Crim. App. 2017); *Dixon*, 201 S.W.3d at 734.

[33] *Garcia*, 541 S.W.3d at 233 (citing TEX. CODE CRIM. PROC. art. 38.37).

[34] *See Owings*, 541 S.W.3d at 151; *Dixon*, 201 S.W.3d at 734–35.

appeals held that these two data points ("inside a bathroom" and "on or about the 16th day of August, 1987") were in conflict with one another, such that there was a significant risk that one of two things occurred: either (1) the jury returned a guilty verdict despite harboring a reasonable doubt as to each offense in isolation, or else (2) some jurors voted to convict Garcia of the bedroom incident while others voted to convict him of the bathroom incident.[35]

We disagree with the court of appeals' premise that the jury charge conflated the two incidents. The court's instructions informed the jury that "the State is not bound by the specific date" alleged in the indictment. Rather, "a conviction may be had upon proof beyond a reasonable doubt that the offense . . . was committed at any time prior to the filing of the indictment which is within the period of limitations." The jury was also told that, based on the alleged offense date, the "limitation period applicable to the offense of aggravated sexual assault of a child is ten years prior to August 28, 1987, the date of the filing of the indictment."

"We generally presume the jury follows the trial court's instructions in the manner presented."[36] That being the case, we perceive no great risk that the jury would have understood August 16, 1987 as an express reference to the bedroom incident. Instead, following the court's instructions, the jury would have understood that both incidents—the bedroom incident and the bathroom incident—fell within the time period described by the

---

[35] *Garcia*, 541 S.W.3d at 233–34.

[36] *E.g.*, *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

limitation paragraph. Based solely on the date of August 16, 1987, the jury would not have felt steered in one direction or another.

By contrast, the instructions' explicit description of an assault occurring "inside a bathroom" would have signaled to the jury that its verdict should ultimately turn on whether it harbored a reasonable doubt as to the bathroom incident. The instructions' description of the incident—occurring "inside a bathroom"—was just enough information for the jury to distinguish it from all of the other incidents upon which the jury could, consistent with the indictment and the court's instructions, vote to convict. At the same time, the description was not so detailed as to risk "summing up the testimony [or] discussing the facts" of the case.[37] This, coupled with the court's instruction that the jury had to unanimously agree upon this incident to convict Garcia of aggravated sexual assault, assures us beyond a reasonable doubt that Garcia's right to a unanimous verdict was not imperiled by the trial judge's election error. The third election purpose was not frustrated.

With regard to the second election purpose, we must take into account that in this case, unlike in some of our earlier election cases,[38] the evidence against Garcia "was presented from [multiple] different sources."[39] The victim testified about the bathroom and bedroom incidents, but the bedroom incident was also supported by outcry evidence and by

---

[37] TEX. CODE CRIM. PROC. art. 36.14.

[38] *See Owings*, 541 S.W.3d at 151; *Dixon*, 201 S.W.3d at 735.

[39] *Garcia*, 541 S.W.3d at 233.

the presence of semen on the victim's underwear.

However, as previously discussed, the jury was duly informed that its job was to determine whether the State had proven beyond a reasonable doubt that, "while inside a bathroom," Garcia had penetrated the victim's sexual organ with his own. Furthermore, the jury was instructed that evidence of extraneous "crimes, wrongs, or acts against the child who is the victim of the alleged offense in this case" could be only considered "in determining . . . relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child, and for no other purpose." This instruction would have reinforced the notion that, while the jury was permitted to consider bad acts other than the bathroom incident for some limited evidentiary purposes, its ultimate job was to decide whether the bathroom incident was proven beyond a reasonable doubt. This alleviates any concern that the jury "added up two not-quite-proven offenses to get the State across the finish line."[40] The second election purpose was not frustrated.

That leaves only the fourth and final election purpose—notice to Garcia for the purpose of mounting a defense—potentially favoring reversal. But, for the following reasons, we are convinced beyond a reasonable doubt that the trial judge's violation of Garcia's right to adequate notice did not contribute to his conviction.

In his defense, Garcia denied that either incident had occurred, and he adopted a

---

[40] *See* State's Brief on Discretionary Review at 32.

defensive strategy that the State characterizes as a "blanket denial." Garcia called, among other witnesses, his son, who testified that the victim did not like Garcia when she was growing up because he was a "strict disciplinarian." Another of Garcia's children echoed this description of Garcia. We have held in previous cases that these kinds of "blanket denial[s]" may render any violation of the defendant's right to adequate notice harmless.[41]

We do not doubt the validity of this reasoning, but we must be careful not to take it too far. For example, there may be instances in which the defendant prepares a tailored defense as to each incident, but those defenses are inconsistent with one another. In those circumstances, if the trial judge denies the defendant's timely motion for election, the defendant might plausibly argue that the trial judge's ruling left him no choice but to make a blanket denial. For, without knowing which incident would be submitted to the jury before he opened his defense, what else was the defendant to do? He could not present both defenses simultaneously without losing credibility with the jury, and if he presented one defense but not the other, the State would simply elect the undefended incident. In that event, a blanket denial would have been the only reasonable option left.

Although it is a close call, we are not persuaded that Garcia was faced with any such dilemma. Arguing that (1) the bathroom incident was vaguely described and uncorroborated, (2) the physical evidence supporting the bedroom incident failed to implicate him, and (3)

---

[41] *E.g.*, *Owings*, 541 S.W.3d at 153–54 (citing *Cosio v. State*, 353 S.W.3d 766, 777–78 (Tex. Crim. App. 2011)).

in any event, the victim had a motive to lie, are not inconsistent defensive strategies. Even if Garcia could plausibly claim that presenting all of these defenses at the same time cost him credibility with the jury, he has made no argument to that effect. We are ultimately unconvinced that if the trial judge had put the State to its election at the appropriate time, Garcia's defensive strategy would have been meaningfully different.

For these reasons, with respect to each of the rights and interests at stake, we conclude that the trial judge's election error was harmless. The State's second ground for review is sustained.

### III. CONCLUSION

We reverse the court of appeals' judgment. Because the court of appeals overruled Garcia's only other issue on appeal, the trial court's judgment is affirmed.

Delivered: November 20, 2019

Publish